UNITED STATES of America,
Plaintiff–Appellee,

v.

Russell C. SIEVERT, Defendant–
Appellant.

No. 02–3974.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 2003.

Decided Nov. 26, 2003.

Bradley W. Murphy, Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

Michael J. Gonring, Joshua B. Fleming, Quarles & Brady, Milwaukee, WI, for Defendant–Appellant.

Before MANION, KANNE, and EVANS, Circuit Judges.

### ORDER

Russell S. Sievert appeals from his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Sievert requests a new trial, arguing that he was deprived of a fair proceeding because the government relied on a witness's prior inconsistent statement, purportedly made out of court, not only for the purpose of impeachment, but also for the improper purpose of substantively proving that Sie-

vert had possessed a firearm. Because the district court properly instructed the jury regarding such prior inconsistent statements, we hold that Sievert was not deprived of a fair trial and we affirm his conviction.

## I.

It is uncontroverted that Russell Sievert and Randy Downard were in the woods near Chillicothe, Illinois on January 10, 2001, that Sievert is a convicted felon for purposes of § 922(g), that the rifle he is accused of possessing traveled in interstate commerce, and that the rifle had a capacity of carrying five rounds, but was loaded only with three rounds when police seized it. The dispute at trial centered on whether, as the government contended, Sievert had possessed the rifle, or, as the defense maintained, Downard carried not only a shotgun, but also the rifle that Sievert stood accused of carrying. Among the key evidence at trial was Downard's testimony.

On direct examination by the defense, Downard testified that, when he and Sievert were stopped by Conservation Police Officer (CPO) James Byron, he (Downard) was carrying not only the shotgun that he had carried to hunt coyotes, but also the rifle that the government accused Sievert of carrying. Downard further explained that Sievert had not carried a firearm that day, and that Downard had received the rifle a short time earlier from the defendant's nephew, Michael Sievert, who had left the hunting trip early. Downard denied that he had told CPO Jeff Baile, when Baile interviewed him, that he had earlier heard Sievert "shoot a couple of times."

In rebuttal, the government called CPO Baile to the stand. Baile testified that Downard had told him, on January 10, that Downard had "heard [Sievert] shoot a couple of times but he was target shooting."

Defense counsel did not object to Baile's testimony.

In the government's closing argument, the prosecution noted the discrepancy between the testimony of Downard and Baile. First, the prosecutor reminded the jury that Downard's testimony had been impeached, arguing that "[a]lthough Mr. Downard in his testimony is adamant that Mr. Sievert did not fire the weapon that evening, his testimony was impeached with an earlier statement he gave to Officer Baile in which he said he heard Russell fire a couple of shots." The government then questioned the credibility of Downard's sworn testimony.

How does that testimony square with there being a fully loaded .222 rifle carrying five rounds? Mr. Sievert, Michael Sievert, Jr., was adamant about that, fully loaded. Witnesses observed with their own ears that evening two shots fired from the refuge and then the gun is found to carry only three rounds at the time of the stop. Five minus two is three. We all learned that in grade school I hope, but it applies right here in court. That math tells you that from the time the defendant, Russell Sievert, obtained that weapon, he exercised control over it by firing it and that is possession as is defined under federal law.

And yet, the defense that has been put forward to you is based upon Randy Downard saying that Mr. Sievert had no gun that night. In a sense, you can see Mr. Downard here falling on the sword for Russell Sievert. Even though his story that evening at the hospital clearly indicated that Mr. Sievert had fired the weapon on a couple of occasions—had fired a couple of rounds, excuse me—his statement here now is different than that.

Some of the instructions are going to give you some guidance in what we call

credibility of witnesses because it's your decision to decide what witnesses you're going to believe and what part or parts of any given witness' testimony to believe.

One of the things you should consider is a witness' interest or bias in this particular case. Remember, Mr. Downard didn't have any bones to pick with Mr. Russell Sievert that night. I mean, why would he be making up things like firing a couple of rounds? Why would he make that up on that evening?

But now, you see, the defendant is charged in federal court. Mr. Downard comes into court and the question that I ask you to ask of yourselves while you're scrutinizing the testimony of Randy Downard is has his interest or bias in this case now overcome his ability to tell you folks the truth. It's called a question of credibility of witnesses. Because you can't believe Randy Downard on the one hand and find that the defendant had possession. That should be very clear to you.

(Tr. 258–59)

In his rebuttal closing, the prosecutor reiterated that

[t]wo shots came from that refuge shortly after the hunter saw these two individuals, Mr. Downard in the white and Mr. Sievert in brown, go into the refuge. Each had a gun. The shotgun, no evidence that it was fired. It was still fully loaded just as Mike Sievert said it had been loaded. The rifle, however, was missing two shots. Two shots were heard by the hunter. Two shells missing, three left. I still submit that five minus two equals three. That shows, over and above Officer Byron, over and above John Theiler, over and above the statements made by individuals, that shows that the defendant, Russell Sievert, had in hand the .222 rifle which

you have seen here and that he has been proven guilty of possessing that gun. Thank you.

(Tr. 276–77)

Defense counsel did not object to the government's closing argument. In its instructions to the jury, the district court included Seventh Circuit Pattern Jury Instruction 3.09, which provides as follows:

You have heard evidence that before the trial a witness made a statement that may be inconsistent with the witness's testimony here in court. If you find that it is inconsistent, you may consider the earlier statement only in deciding the truthfulness and accuracy of that witness's testimony in this trial. You may not use it as evidence of the truth of the matters contained in that prior statement.

## II.

■ The only issue on appeal is whether, as Sievert argues, the district court erred "by not giving an adequate limiting instruction after the prosecutor argued, as substantive evidence, [Downard's] out of court statement that could have been admitted only for impeachment purposes." Because Sievert did not object at trial, we review this issue for plain error. *United States v. McClurge,* 311 F.3d 866, 872 (7th Cir.2002).

■ Assuming that the government used Downard's prior inconsistent statement made before trial to prove the truth of the matter asserted, which is an issue we need not decide, plain error would still not undermine Sievert's conviction. In *United States v. Martin,* 63 F.3d 1422 (7th Cir.1995), we held that, where the defense did not object to the use of a prior inconsistent statement made before trial for purposes of proving the truth of the matter asserted, it was not plain error for the district court to fail to provide a limiting instruction *sua sponte,* especially in light

of the consideration that the district court had given Pattern Jury Instruction 3.09. *See id.* at 1429–30. *Martin* is closely analogous to this case and is one of numerous cases illustrating the presumption that juries follow instructions, and that instructions are generally sufficient to cure any prejudicial effect arising from an improper argument. *See, e.g., United States v. Linwood,* 142 F.3d 418, 426 (7th Cir.1998); *United States v. Anderson,* 61 F.3d 1290, 1300 (7th Cir.1995).

Sievert attempts to distinguish *Martin* by arguing that this is one of the rare cases in which the jury cannot be presumed to have followed instructions. Sievert can prevail on this point only if he shows that there is "an overwhelming probability that the jury was unable to follow the instruction that was given." *Linwood,* 142 F.3d at 426 (internal quotation omitted). This is what Sievert has to say as to this issue:

> [T]here was nothing more incriminating than the statement of the person who was with Appellant, that Appellant in fact possessed a firearm. Under normal circumstances, the limiting instruction given by the Court may have survived under the presumption. But when no instruction was given at the time the evidence came in, and when the Government was allowed to argue that the Baile testimony made his case, circumstances required judicial intervention to make sure that the jury treated the evidence properly.

(Appellant's Br. at 24)

Sievert points to no analogous case in which this court, or any other court, has held that a jury was unable to follow an instruction to a consider prior inconsistent statement made before trial only for the purpose of impeachment. Nothing in his argument, moreover, convinces us that there is an overwhelming probability that the jurors could not do what the district court told them to do in plain English: consider Downard's prior inconsistent statement only for the matter of impeachment. We therefore hold that the district court's instruction to the jury cured any prejudice that Sievert may have suffered because of the government's alleged improper use of Downard's prior inconsistent statement. *See Martin,* 63 F.3d at 1429–30.

## III.

The district court provided Seventh Circuit Pattern Jury Instruction 3.09, which was sufficient to cure any prejudice that Sievert may have suffered from the government's arguable reliance on Downard's prior inconsistent statement for the truth of the matter asserted. We therefore hold that plain error does not undermine Sievert's conviction.

AFFIRMED.